BREWSTER *v.* BREWSTER
(Two Appeals in One Record)

[No. 117, October Term, 1954.]

194

*Motion to dismiss appeal denied, per curiam, March 8, 1955.*

*Decided May 13, 1955.*

*Motion for rehearing filed June 13, 1955, denied June 21, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Stedman Prescott, Jr.,* and *Meredith R. Hoffmaster,* with whom were *Eugene M. Feinblatt, Staley & Prescott* and *Gordon & Feinblatt* on the brief, for the appellant.

*Robert E. Clapp, Jr.,* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

On the former appeal in this case, reported in 204 Md. 501, we reversed a decree of the Chancellor entered on November 10, 1953, for a sum representing past due alimony under a decree of divorce *a mensa* passed on June 26, 1951, and holding the husband in contempt. Our decision was based on the fact that, in his answer to a petition praying the relief granted, the appellant had set up an absolute divorce obtained by him in Arkansas on July 2, 1951, supported by an exemplified copy thereof. No testimony was taken on the petition and answer, and we held that unless and until the Arkansas

decree was judicially impeached and declared to be invalid it was entitled to full faith and credit and would oust the jurisdiction of the Maryland court over a marriage status that had been effectually dissolved. We remanded the case in order that the Chancellor might pass on the validity of the Arkansas decree.

The present appeal is from an order and decree passed on September 15, 1954, declaring the Arkansas decree to be void, entering a money decree for past due alimony, ordering the transfer of certain stock certificates to the wife and the delivery to her of certain personal property, directing the payment of various counsel fees and costs, and holding the husband in contempt for defiance of various orders passed in the cause.

The appellant now contends that neither he nor his wife was domiciled in Maryland after 1946, and hence that the Maryland court had no jurisdiction over him or their married status from the inception of the proceedings. This is an extraordinary contention, for the record shows that he filed the original bill for divorce alleging desertion, on April 6, 1950, which he later dismissed, and on April 12, 1950, he filed a bill for divorce on the ground of voluntary separation, in the Circuit Court for Frederick County. In each of these bills he alleged that he was a resident of Frederick County and had been so for more than two years last past. He alleged that the respondent was a non-resident of Maryland, residing at 2500 Q Street, Washington, D. C. Mrs. Brewster appeared and filed a cross-bill, alleging desertion on his part, in which she alleged that she was a resident of Maryland. In his answer to the cross-bill he again alleged that he was a resident of Maryland.

The case being at issue, the appellant testified under oath, before an examiner, that he was then residing at Catoctin Lodge, Thurmont, Maryland, and had resided in Frederick County for more than two years past. He also testified that he bought a hunting lodge and a farm in Maryland in 1931, and that the lodge was "more than a summer home". In fact, it was a rather elaborately furnished year-round house and guest house, and the

farm consisted of some 1,200 acres, chiefly mountain land. In 1943 he bought a home and lived in Frederick, but sold it in 1946. Thereafter he maintained an apartment in Washington, but he testified that he had no intention at that time of surrendering his Maryland domicile. The appellant was a practicing lawyer and tax consultant with offices in the District of Columbia. He had written a number of books on the tax laws. He testified: "I have been adjudicated by the Tax Court of the District of Columbia as a resident of Maryland." He continued to use the lodge for vacations and weekends with his wife and daughter, or for the entertainment of clients. The title to the lodge and farm were subsequently placed in the name of separate Maryland corporations, all of the stock of which was issued in his wife's name, and of which he was officially designated as the resident agent. He testified that he was a registered voter in Frederick County, and it was shown by the record that he voted there in the general election of 1950, although he swore that he had not voted since 1948.

Mrs. Brewster testified that her husband had always claimed a Maryland residence, and that she did too, because her residence was that of her husband. She testified she was also registered as a voter in Maryland and had frequently stayed at the lodge. There was thus evidence in the sworn testimony of both parties that one or both of them had established a residence in Maryland and maintained it at the time of the hearing, corroborated by other relevant circumstances. We think the Chancellor was fully justified in assuming jurisdiction over the subject-matter and the parties, implicit in the passage of the decree *a mensa,* even if we assume, without deciding, that the question is open at this stage of the case, after a previous appeal in which the point was not raised, and a remand for the limited purpose of adjudicating the validity of the Arkansas decree. See *Plank v. Summers,* 205 Md. 598, and *Restatement, Judgments,* Sec. 10. There is authority for the proposition that the appearance of both parties operates as an estoppel to subsequently contest the facts upon which juris-

diction is rested. See *Coe v. Coe*, 334 U. S. 378, and *de Marigny v. de Marigny*, 92 N. Y. S. 2d 217. The fact that the appellant now has the temerity to argue, in effect, that he testified falsely in the proceeding leading to the prior appeal, does not require a reopening of the enrolled decree, *Ewald v. Ewald*, 167 Md. 594, 597, but rather reflects upon the veracity and good faith of his affidavits in the present appeal.

The appellant appears to argue that even if the Maryland court had jurisdiction in the first instance, its jurisdiction was ousted when he left the State, regardless of whether he established a residence in Arkansas or elsewhere. But the rule is that domicile, once established, continues until it is shown to have been changed to another definite location. *Shenton v. Abbott*, 178 Md. 526. And it is well settled that the jurisdiction of an equity or divorce court, once acquired, continues until all matters in litigation are finally disposed of. *Restatement, Conflict of Laws*, Sec. 76. In Comment C (1948 suppl.) it is stated: "* * * A change in domicil of the parties or other changes in circumstances does not destroy the jurisdiction, but may lead the court in a reasonable exercise of discretion to refuse to exercise jurisdiction. * * *" See Illustration 3. and 4., applying the rule specifically to support orders. See also *McSherry v. McSherry*, 113 Md. 395.

The only substantial question raised on this appeal is the correctness of the Chancellor's finding that the Arkansas decree was invalid. It is argued that domicile is a question of intention and that the evidence shows clearly that the appellant intended to, and did in fact, establish his domicile in Arkansas. It is conceded that the Maryland court may inquire into the question of domicile where the recognition of a foreign divorce, obtained without personal appearance of the adverse party, is involved. *Cook v. Cook*, 342 U. S. 126, and cases cited. See also *Rice v. Rice*, 336 U. S. 674, and *Esenwein v. Commonwealth*, 325 U. S. 279. See also *Epstein v. Epstein*, 193 Md. 164, and *Slansky v. State*, 192 Md. 94.

Here it was shown that the appellant only claimed an Arkansas domicile after he became aware that the proceeding in Maryland would go against him. He consulted counsel on the very day of his arrival in Little Rock, where he registered at the LaFayette Hotel on March 17, 1951. He had obtained a delay in negotiations for a property settlement in Maryland by representing, in a letter to his then attorney, that he "was obliged to leave for the south on business". He continued to maintain a law office and apartment in Washington, where his automobile was licensed and continued to be licensed until 1954, when he took out a Virginia license. He filed suit for divorce in Arkansas on May 16, 1951, claiming a residence there of sixty days. The appellee was notified by mail, but did not appear. On the contrary, she advised the attorney for the appellant there of the pendency of the Maryland proceedings and the injunction issued May 29, 1951, enjoining the appellant from proceeding further under his bill for divorce in Arkansas. The Maryland court passed its decree for divorce *a mensa* on June 26, 1951, and the Arkansas court passed its decree for divorce *a vinculo* on July 2, 1951. The news of this action was wired to the appellant in Washington by his Arkansas attorney.

Mr. Brewster was registered at the LaFayette Hotel until June 28, 1951, when he took an apartment for the summer months. From September 25, 1951, to October 3, 1951, he again registered at the hotel. During this whole period he was frequently absent from the city, looking over oil properties in Oklahoma, Texas and elsewhere, and discussing the possibilities of forming a partnership to engage in tax work in Little Rock. He returned to Washington three or four times. The extent of his activities casts serious doubt upon his contention that one of the reasons for his going to Little Rock was the state of his health, and his inability to actively practice law. His efforts to establish himself in the oil business or as a tax consultant, as he claimed, came to nothing. He paid a poll tax in Little Rock in 1951, but since October 3, 1951, he has been in Little Rock on only

three occasions; three days in January, 1952, four days in May, 1952, and two days in January, 1953. Since that date he has apparently lived in Washington, or in Virginia, near Washington. He was remarried in December, 1952. These facts have an important bearing on the question of *animus manendi. Epstein v. Epstein, supra,* p. 174. During the whole period he maintained his business headquarters in Washington, and filed his Federal income tax returns in Baltimore. His Washington apartment was sublet for three months in March, 1951, and about the same time he changed to a non-resident membership in the Metropolitan Club, Washington. It was shown in cross-examination, however, that he subsequently used the club so frequently, he was asked in June, 1953, to change to a resident membership.

In his opinion the Chancellor said: "Numerous depositions were taken in Arkansas on behalf of Mr. Brewster, but if we look at them we find that they are merely self-serving declarations made by Brewster to parties with whom he came in contact while in Arkansas and they in turn have repeated them, and in turn they have been filed as a part of the evidence in the form of depositions.

"Looking further at what Mr. Brewster did, he went to Arkansas, he rented a room in a hotel, took with him certain books, thereafter rented larger living quarters and contacted different people concerning the possibility of establishing a business in that community. In addition thereto, he made a loan of the sum of $5,000 from a bank in Arkansas, but this loan was only for a short period of time and its purpose has never been disclosed in the testimony. The Court cannot help but feel that this was just another part of his scheme to make it appear that he was a domiciled resident of the State of Arkansas and intended to make it his future home."

We think the appellee met the burden of establishing that her husband's claim of domicile in Arkansas was not *bona fide,* and that the finding of the Chancellor was supported by the evidence. Cf. *Walker v. Walker,* 125 Md. 649. This issue having been correctly decided, as

we hold, it follows that the jurisdiction of the Maryland court was not ousted, and all of the orders based thereon are valid. The objection that one of the depositions, which was returned to and read by the court without objection from counsel, was not formally marked as in evidence, is too frivolous to discuss. Cf. *Dean v. Eastern Shore Trust Co.,* 159 Md. 213, 220. So is the objection that the letter to his Maryland attorney, used as a basis for the court to defer action pending his business trip to the south, was a confidential communication. Cf. *Shawmut Mining Co. v. Padgett,* 132 Md. 397. It was written for the very purpose of securing a delay, and in any event the objection comes too late. We had occasion to refer to it on the former appeal, where it was made part of the record without objection.

Objection to the order directing the delivery of a picture and a rug to the appellee is without merit. There was uncontroverted testimony that both of these articles belonged to the wife. The Court reserved decision upon other articles of personal property in which joint ownship was claimed. Code (1951), Art. 16, sec. 38. With respect to the shares of stock, the testimony was that they stand in her name upon the books of the corporations, and it was shown that there was a prior transfer to the corporations of properties previously owned by her and her husband as tenants by the entireties. The transfer of stock on the books would be a sufficient delivery, even if regarded as a gift. *Allender v. Allender,* 199 Md. 541. Finally, the contention that the Chancellor erred, in dismissing his petition for reduction in the amount of alimony, is without merit for the reason that the appellant was in default and in contempt. *Gunter v. Gunter,* 187 Md. 228, 233; *Skirven v. Skirven,* 154 Md. 267, 271. Moreover, the Chancellor indicated in his opinion that he would consider reduction in the amount of alimony if the appellant would submit further information as to his actual income and holdings, and deliver the stock as ordered.

*Order and decree affirmed, with costs.*