RETHORST *v.* RETHORST

[No. 122, October Term, 1956.]

*Decided June 12, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Arthur J. Hilland,* for appellant.

*Charles W. Prettyman,* for appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal by Scott C. Rethorst, appellant, from (1) a final decree of the Circuit Court for Montgomery County which awarded to the appellee, Jean J. Rethorst, custody of the minor children of the parties, and required the appellant to pay an additional counsel fee to counsel for the appellee and to pay the court costs; and (2) from certain orders entered *pendente lite* with regard to the custody of the children, alimony and counsel fees, and holding the appellant guilty of contempt for an alleged violation of orders for the payment of alimony and counsel fees. He also seeks (3) the reversal of an order entered after this appeal directing appellant to

4

pay to appellee an additional counsel fee and suit money on this appeal. We find no separate appeal from that order.

Scott C. Rethorst, appellant, and Jean J. Rethorst, appellee, were married February 25, 1944, in New York, and are the parents of two children, viz.: John Carter Rethorst and Susan Rethorst, aged nine and six years, respectively. Mr. and Mrs. Rethorst after their marriage lived in Akron, Ohio, Washington, D. C., Arlington, Virginia, and Pasadena, California. In September, 1950, while the United States was engaged in the Korean conflict, the appellant, who was attending the California Institute of Technology, took a leave of absence to do work again as an Air Force consultant in the District of Columbia. At first he resided in an apartment in Washington, D. C., but recalling the housing problem during World War II, shortly after his arrival he purchased a home in Montgomery County, to which he brought his family. There is evidence supporting his contention that this was meant to be only a temporary abode, and we think that his domicile continued to be in California. In the interest of brevity, we shall not review the evidence leading to that conclusion, which is not really disputed. (The finding of the California court referred to below does not determine his residence prior to September 27, 1953.)

In February, 1952, the appellee decided to separate from her husband, and she rented an apartment in Montgomery County for herself and the two children. Within a few days after the separation she filed this suit in the Circuit Court for Montgomery County for a divorce a mensa et thoro from the appellant on the ground of abandonment and she asked that the custody of the children be awarded to her. On February 15, 1952, a show cause order was signed allowing her $300 a month alimony pendente lite and initial counsel fees of $300, and a copy of the bill of complaint and of the order to show cause were served on the appellant personally on February 20, 1952. An informal agreement was reached by the parties under which the husband agreed to make payments of $200 a month for the support of his wife and children. The docket entries show no further action in this suit until August 30, 1954.

The order to show cause, which provided for the payment of alimony *pendente lite,* did not refer specifically either to the custody of the children or to their support. The informal agreement between the parties evidently was to the effect that the children should live with the appellee, that the payments by the appellant were to be for their support as well as for the benefit of the appellee, and that the appellant should have the right to visit the children and to take them out with him, returning them to their mother in the evening.[1] This agreement was adhered to until August 28, 1954. In September, 1953, the appellant had returned to his graduate studies at the California Institute of Technology, but he returned to Montgomery County on an extended visit in the summer of 1954 and resumed his visits to the children. During a visit on August 28, 1954, the appellant took the children from the appellee's apartment as on other occasions. This time, however, he put them on board a train, without any notice to the appellee of his intention to do so, and took them with him to California.

While en route to California the appellant mailed back his answer to the bill of complaint in this suit. This answer was filed in proper person, and not through counsel, though its form and content suggest that he had legal assistance in preparing it. Its most important features were a denial of the charge of desertion and an admission that the parties were residents of Maryland. From this point on something of a transcontinental legal battle developed quite rapidly.

Mrs. Rethorst undertook to give notice by mail to the appellant that her deposition was to be taken at Rockville, Maryland, on September 21, 1954. For some reason not explained, it was taken on September 14th. Mr. Rethorst was not present, nor was he represented by counsel. He had not given any address in California when he sent his wife a note, dated August 28th, saying that he was taking the children there, and the notice appears to have been sent to the place where he had been visiting in Montgomery County, which

---

1. In one or two instances in 1954, he kept the son with him overnight or for a week-end.

was the former residence of the parties. A registered mail, return receipt requested, typewritten letter from the appellant to the appellee suggesting reconciliation was received by her on September 14, 1954. It gave a Pasadena post office box return address.

On or about September 16th, Mrs. Rethorst left by plane for California and went to Pasadena. It took her a few days to locate her husband and the children. She promptly instituted a *habeas corpus* proceeding on September 24, 1954, in Pasadena to try to regain custody of the children, and a summons in that case was served on the husband the next day.

He reacted by filing a bill for a divorce on September 27, 1954, charging extreme cruelty and desertion. In that suit he also sought custody of the minor children. Both the *habeas corpus* case and that divorce suit were filed in the Superior Court of California in and for Los Angeles County, and they were consolidated. Process was served upon the wife in the divorce suit. She was represented by counsel, appeared at several hearings and offered testimony in the California proceedings.

As the California proceedings were getting under way, the appellee, through her Maryland counsel, filed a petition on September 24, 1954, in the Circuit Court for Montgomery County for custody of the children *pendente lite*. This petition and the testimony taken on September 14th, which was filed with it, showed the removal of the children from Maryland by their father on August 28th. The Circuit Court issued an order on September 24, 1954, awarding custody of the children to the mother.

On September 28, 1954, counsel (not the appellant's present counsel) entered his appearance for Mr. Rethorst in the Circuit Court for Montgomery County, and on November 9, 1954, filed an answer on his behalf to the wife's petition of September 24. By this answer the appellant denied any wrongdoing on his part in taking the children to California, referred at some length to the California divorce action and proceedings therein, and denied that he had been a resident of Maryland after September 10, 1953, but reiterated his earlier

admission that he had been a resident of Maryland when the wife's suit was filed in February, 1952. He asserted the presence of the children in California and his own residence there. He concluded with a prayer that the wife's petition for custody *pendente lite* be dismissed, "since the California Court has jurisdiction of said children and is proceeding to hear the matter of custody at the present time."

There was considerable activity in California during the fall of 1954, not all of which need be detailed here. The California court held several hearings. On October 27th it enjoined each of the parties temporarily from removing the children from its jurisdiction. Later—in November, 1954— it awarded custody of the children *pendente lite* to the mother, and she returned to Maryland with the children. In October her testimony was taken by deposition in Los Angeles for use in the Maryland case. Insofar as the custody of the children was concerned, it was substantially the same as that given in her deposition of September 14th in Maryland.

On December 1, 1954, the appellant filed an amended complaint in the California case, and on January 24, 1955, the appellee filed an answer thereto. In addition to asserting defenses on the merits, she urged that the California case was barred by the Maryland suit or at least should be abated during its pendency. She also contended that even if a divorce were granted to her husband, the custody of the children should be awarded to her. The California case resulted in findings and a decree entered on May 14, 1956, which (*inter alia*) found the husband to have been a resident of California for at least a year prior to the date of filing the complaint (September 27, 1954), that the husband was entitled to a divorce on the grounds of cruelty and desertion, that he had not deserted the wife, that she was not entitled to alimony, and that each of the parties was a fit person to have custody of the children, and awarded custody of the son to the husband and of the daughter to the wife, with provisions for payments by the husband for the support and care of the daughter. It also allowed a counsel fee to the wife's California counsel. This decree was, however, interlocutory and, though it determined the issues between the parties, it did

8

not have the effect of dissolving the marriage. That would not occur until a year later.

During the pendency of the California case there was also considerable activity in the Maryland suit in addition to that already mentioned. So much of it as now seems pertinent is referred to below. On February 17, 1955, the wife obtained an order for alimony *pendente lite* at the rate of $300 per month and a counsel fee of $300. There is no showing that any notice of an application for such an order was given the husband or his counsel, and the husband asserts that there was none.

On April 15, 1955, the husband filed a so-called special plea challenging the jurisdiction of the Maryland court on the ground that both parties were residents of California. This appears to have lain dormant.

On June 27, 1955, the wife filed a petition that the husband be adjudged in contempt for non-payment of alimony and seeking a monetary decree against him for $5,453.89, claimed to be in arrears. An order to show cause on or before July 15, 1955, was issued on this petition on the same day, provided that a copy be served on Mr. Rethorst or his attorney of record on or before June 30th. The sheriff's return shows that service was made on Mr. Rethorst personally on July 1, 1955—one day late. The wife obtained another show cause order of like tenor issued on July 25, 1955, returnable on August 8th, provided that a copy be served on the husband, or his attorney of record, on or before August 1st. A copy was served on his attorney of record on August 1, 1955. No answer was filed within the time specified. On August 9, 1955, an order was filed adjudging the appellant in contempt, ordering the issuance of an attachment against him and awarding a monetary decree against him for $2,810. How this amount was arrived at does not clearly appear.

In January, 1956, the appellee sought a summary judgment to enforce her claim for alimony awarded by the decree of August 9, 1955, which was resisted by the appellant and appears not to have been disposed of.

On April 30, 1956, the appellant filed three separate motions to vacate the orders or decrees herein dated, respec-

tively, September 24, 1954, February 17, 1955, and August 9, 1955. On June 21, 1956, the Circuit Court overruled all three motions and filed an opinion and order which awarded the custody of both of the children to the appellee and ordered the appellant to pay $150 a month for their support and to pay the costs of the proceedings and a fee of $500 to the appellee's counsel.

The principal question at issue is the effect of the decree of the California court with regard to the custody of the children. Since it and the Maryland court reached the same conclusion as to the daughter, the controversy is limited in its practical effect to the custody of the son; but the same principles control as to the custody of both children. Other questions pertain to the orders of the Circuit Court for Montgomery County relating to alimony, counsel fees and suit money, and to the appellant's right to maintain this appeal, notwithstanding that he has been adjudged in contempt of the Circuit Court.

The last order to which the appellant objects in his brief is the order of September 7, 1956, allowing the wife a counsel fee of $200 and suit money of $100. He has, however, failed to appeal from that order. It is not automatically brought up for review by the appeal from the final order of June 21, 1956, under either Section 32 of Article 5 of the Code (1951), which was in force until December 31, 1956, or under Rule 887 of the Maryland Rules which superseded that Section on January 1, 1957, because the order of September 7th was, of course, not previous to the order of June 21, 1956. Since (despite the wealth of pleadings and motions in this case) no appeal was taken from the order of September 7, 1956, it is not before us for review.

The appellee moved to dismiss the appeal on several grounds. One was that the husband is in contempt of the Circuit Court for Montgomery County and therefore might not prosecute his appeal until he purges the contempt. The appellee relies chiefly upon *Skirven v. Skirven,* 154 Md. 267, 140 A. 205, in support of this contention. But in *Gunter v. Gunter,* 187 Md. 228, 49 A. 2d 454, the *Skirven* case was explained and a limitation upon its scope was pointed out. It

was said (187 Md. at 233): "This court has held that where a litigant has been adjudged guilty of contempt, he cannot, so long as the judgment stands unimpeached 'be permitted as a matter of right to make any motion, file any petition, or assert any claim for relief in the particular suit in which the contempt has been adjudicated.' *Skirven v. Skirven,* 154 Md. 267, 271, 140 A. 205, 207, 56 A. L. R. 697. In that case, however, the trial court did not undertake to finally dispose of any right, but merely required the petitioner to purge his adjudicated contempt, as a condition to granting him relief in the same proceeding." In *Brewster v. Brewster,* 207 Md. 193, 114 A. 2d 53, the husband's petition for an order reducing alimony was held properly dismissed when he was in default and in contempt. That did not involve the final disposition of substantive rights. See also *Keen v. Keen,* 191 Md. 31, 60 A. 2d 200.

A similar contention was raised on the first appeal in the *Brewster* case, 204 Md. 501, 105 A. 2d 232, but the appellee's motion to dismiss the appeal was there denied. The appellant had there been adjudged in contempt because of noncompliance with an order, the validity of which he challenged by his appeal.

The general rule which now seems well established is that the fact that the husband is in contempt will not prevent his litigating his substantial rights in connection with which the contempt was committed. *Du Pont v. Du Pont* (Del.), 103 A. 2d 234; *Kirchner v. Kirchner,* 5 N. J. Super. 341, 69 A. 2d 30; *Hovey v. Elliott,* 167 U. S. 409; *McCollum v. Birmingham Post Co.,* 259 Ala. 88, 65 So. 2d 689. See also *Duell v. Duell,* 85 App. D. C. 78, 178 F. 2d 683, 14 A. L. R. 2d 560, and annotation following.

Other grounds urged in support of the motion to dismiss the appeal are that a party whose own conduct renders the court powerless to enforce its decree cannot appeal and that the California decree of May 14, 1956, is interlocutory, not final. Neither of these contentions seems to have any force as applied to this case. We accordingly deny the appellee's motion to dismiss the appeal.

Insofar as the question of custody of the children—or

more specifically, custody of the son—is concerned, the appellant relies upon the California decree and the full faith and credit clause, Article IV, Section 1, of the Constitution of the United States. In this we think that his position is legally sound. There is no doubt, and the trial court fully recognized, that the California decree, even though not final, was entitled to full faith and credit on the divorce questions there litigated. *Johnson v. Johnson,* 199 Md. 329, 86 A. 2d 520; *Brewster v. Brewster,* 204 Md. 501, 105 A. 2d 232; *Coe v. Coe,* 334 U. S. 378; *Sherrer v. Sherrer,* 334 U. S. 343. As was stated in the *Sherrer* case, "the requirements of full faith and credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister State where there has been participation by the defendant in the divorce proceedings, where the defendant has been accorded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to such collateral attack in the courts of the State which rendered the decree." Cf. *Davis v. Davis,* 305 U. S. 32.

In determining the applicability of the full faith and credit clause, the Supreme Court has recognized the divisibility of a decree in a divorce case as between the granting of a divorce and the allowance of alimony. *Estin v. Estin,* 334 U. S. 541; *Kreiger v. Kreiger,* 334 U. S. 555. The decisions in these cases were rendered on the same day as those in the *Sherrer* case and in a companion case thereto, *Coe v. Coe,* 334 U. S. 378. In *May v. Anderson,* 345 U. S. 528, a like divisibility of provisions was held applicable where a single decree (1) granted a divorce and (2) purported to award the custody of the children of the parties. In that case only questions of custody were at issue; and here, too, the chief controversy is over custody and the jurisdiction of the California court to grant a divorce is not under attack. The most significant factual difference between *May v. Anderson* and the present case is that in the *May* case the wife did not participate in the proceedings in the court of the state making, or purporting to make, the award of custody, and in the instant case she did.

In *May v. Anderson, supra,* it was held that the courts of

the state of the mother's domicil (Ohio) were not bound (in a *habeas corpus* suit of limited scope) under the full faith and credit clause by a decree of the state of the father's domicil (Wisconsin) which (in addition to granting him a divorce) awarded custody of the children to him, where the Wisconsin court did not have personal jurisdiction over the wife and she neither appeared nor participated in the case. The main emphasis of the majority opinion is placed upon the lack of personal jurisdiction of the Wisconsin court over the wife. From this, a strong inference, we think, arises that if she had submitted herself to the jurisdiction of the Wisconsin court, its decree would have been entitled to full faith and credit against her in any other state. In the instant case, the wife did participate fully in the proceedings in California, and we think that this difference is of vital effect.

In actual result the decree of the Circuit Court denied full faith and credit to the California decree on the subject of custody, apparently on the ground that Maryland, and not California, had jurisdiction over the children. This view of the law, if supported by the facts, is in accord with the rule set forth in the *Restatement, Conflict of Laws,* § 32, which was recognized and substantially quoted in *Ross v. Pick,* 199 Md. 341, 348, 86 A. 2d 463, in which this Court said: "It is true that a minor child's domicil, in the case of divorce of its parents, is that of the parent to whose custody it has been legally given; *and if there has been no legal fixing of custody, its domicil is that of the parent with whom it lives;* but if it lives with neither, it retains the father's domicil." (Italics supplied.) We believe that this rule of the *Restatement* represents the generally accepted view on this subject. *Beale, Conflict of Laws,* Vol. 1, § 32.1, points out that under the older law, if the parents were living apart against the will of the father, but were not divorced, and the child was with the mother, the child's domicil continued to be that of the father. He goes on to say that under "the correct modern view", if the parents are living apart because of the father's fault, a child living with the mother takes her domicil.

The California court took the view that both it and the Maryland court had jurisdiction to make a custody order,

and that the order of whichever court might first enter a final order in an adversary proceeding would be controlling. It does not seem to have considered the rule stated in § 32 of the *Restatement of Conflict,* but proceeded to award the custody of these children as it deemed proper. Reprehensible as Mr. Rethorst's conduct in taking the children from the mother by what amounts to trickery may have been, all of the facts on that matter could have been presented (and, we believe, were presented) to the California court. The parents and the children were all within its territorial jurisdiction, no final adjudication of the rights of custody had been had in Maryland (only an ex parte, interlocutory order had been signed), and Mrs. Rethorst appeared personally in the California suit and participated fully in those proceedings. Any questions based upon domicil could have been presented. No matter how much we may deplore a determination which has the effect of rewarding the husband's trickery, the judgment of the California court concludes the question of custody and is entitled to full faith and credit here, and is not subject to collateral attack. As is said in the *Restatement, Conflict of Laws,* Chapter 5, Section 147, Comment *a,* pp. 212-213: "An award of custody, like any other judgment or decree of a competent court, is entitled to recognition and enforcement in other states. * * * It is, therefore, conclusive of the status of the child at the time the decree was rendered and the merits of such an award cannot be re-examined either in the state where rendered or in another state."

A case very similar to the instant case arose in California and reached the same result as we do. In *Ex parte Brown,* 90 Cal. App. 2d 651, 203 P. 2d 799, Mrs. Brown went from California to Nevada in January, 1948, for the purpose of establishing residence. On March 3, 1948, she returned to California, got her child from her husband and immediately returned to Nevada. On March 5, 1948, she filed suit for divorce in Nevada and on April 9th received a divorce by default and was awarded custody of the child. Mr. Brown, who had instituted a divorce action in California on March 2, 1948, was also awarded a divorce and custody of the child in that suit. In May, when the former Mrs. Brown returned

to California, Mr. Brown then took custody of the child under the California decree. The court in California held that the Nevada divorce was valid and had dissolved the marriage relationship. It further held that custody was granted as an incident of the divorce and since the California decree was not valid neither was its custody award. On this phase of the case it is to be noted that the *Brown* case was decided before *May v. Anderson, supra.* The court went on to say: "* * *, the decree of a foreign state with respect to custody will be respected by a California court, and will be superseded by a contrary award of custody only upon the ground of changed circumstances."

There is no suggestion of any change of circumstances in the present case. The two decrees were entered within six weeks of each other.

The decree of June 21, 1956, insofar as it awards custody of the children, will accordingly be reversed. The order of September 24, 1954, awarding custody of the children *pendente lite* either has expired because of its own limitation or has ceased to be of any further effect because of the California decree.

The appellant asserts that the Maryland court was wholly without jurisdiction over the suit filed by the appellee on the ground that neither of the parties was domiciled in Montgomery County, Maryland. This contention rests upon the proposition that the husband was always domiciled in California and that the wife had no just cause for leaving him and hence could acquire no separate domicil. There has been considerable diversity and change of opinion as to whether or not a wife can acquire a domicil separate from that of her husband, and the circumstances under which she can do so. Compare Section 28 of the *Restatement, Conflict of Laws,* as originally promulgated in 1934 and as revised in 1948. We shall assume, without deciding, that Mrs. Rethorst did acquire a Maryland domicil prior to filing her bill for a divorce in this case.

We then turn to specific questions raised by the appellant with regard to the order of August 9, 1955, adjudging the appellant in contempt and awarding a monetary decree in

favor of the wife for amounts of alimony *pendente lite* then in arrears, and to the order of February 17, 1955, upon which it was based.

The order of February 17, 1955, is itself based upon the order of February 15, 1952. It recites that the appellant had failed to show cause within the time therein limited why the award of alimony *pendente lite* of $300 a month and of the counsel fee therein provided for should not be made. We think that the order of February 17, 1955, was erroneous and was irregularly passed. The purpose of alimony *pendente lite* has frequently been stated as being to provide temporary support for a wife in need thereof for a reasonable time until her suit for divorce can be brought to trial. By the informal agreement between the parties which subsisted for two and a half years the order to show cause was superseded and allowed to lapse. The wife made no effort to bring her case to trial and was content to accept the $200 a month paid under the agreement. Laches and acquiescence would seem to bar her attempt to revive a claim based on the 1952 order; and an award for temporary alimony more than a year in arrears is not permissible. *Kalben v. King,* 166 Md. 632, 172 A. 80.

The absence of notice to the husband with regard to the order of February 17, 1955, after the order of February 15, 1952, had become *functus officio* also calls for reversal of the order of February 17, 1955. It is true that in *Buckner v. Buckner,* 118 Md. 263, 84 A. 471, this Court upheld an order allowing a counsel fee for services of the wife's counsel on the husband's appeals from the denial of a divorce which he sought and from the granting of a divorce to the wife on her cross-bill, in spite of an attack upon this order based specifically upon the ground of lack of notice to the husband. This Court there said (118 Md. at 267): "The Court had jurisdiction of the subject-matter and the parties, and whilst it may be conceded that the order was improvidently, or irregularly passed without notice to the appellant, it was not for that reason void for want of jurisdiction in the Court. Undoubtedly such orders should not be passed, unless in exceptional cases, without notice to the parties to be affected;

but as the order appealed from is in all other respects free from objection, it will be affirmed."

The result of that case may have been merely to avoid a useless remand, since both the jurisdiction of the trial court to pass the order and the reasonableness of the fee were apparent. While the result may be sustainable on that ground, we do not believe that the reason upon which the case proceeds is sound. Notice is ordinarily an essential of proper procedure, and we find no basis for regarding this case as outside of ordinary rules. We think that there must have been some oral request on the part of the appellee for the passage of the order of February 17, 1955, and there is no showing of notice to the appellant. What we said in *Martin G. Imbach, Inc. v. Deegan,* 208 Md. 115, 117 A. 2d 864, seems to be equally appropriate in the present case:

"* * * It is equally clear that if the plaintiff's request had been made by a written motion (as would certainly have been appropriate), a copy thereof would have been required to be served on opposing counsel. (General Rules of Practice and Procedure, Pt. Two, V. (Service of Pleadings and Other Papers), Rules 1 (a) and 1 (c) [now Rule 306 of the Maryland Rules].) The fact that the request was oral did not dispense with the need for notice as a matter of fairness as well as propriety. We have no doubt that the omission of notice on the part of plaintiff's counsel was unthinking rather than deliberate and that the Judge's action in granting the plaintiff's request for a change in the ruling without any showing that the defendant's counsel had been notified of the request was also inadvertent. The change in the ruling was, however, substantial and clearly it should not have been made without notice to the defendant's counsel of record and an opportunity to object and be heard, if such counsel so desired." We may note that our research has not disclosed any case subsequent to the *Buckner* case in which it has been cited to uphold the validity of an order despite lack of notice. In the cases in which it has been cited, either no question of notice was involved or notice was given. In *Mulhall v. Mulhall,* 120 Md. 22, at p. 27, 87 A. 490, it was cited in upholding an order for the allowance of a counsel fee on appeal

passed without hearing testimony on the bill, answer and cross-bill; but notice respecting the order was given. See also *Harvey v. Slacum,* 181 Md. 206, at p. 210, 29 A. 2d 276, a case which involved the need for service of original process.

Since the order of August 9, 1955, rests on the void order of February 17, 1955, it too must fall. Though we find no substance in the appellant's claim of lack of sufficient notice in connection with that order, we note that the appellee's petition was for a monetary decree for back alimony based on the order of February 17, 1955, and for a contempt order to enforce such a decree. The order of August 9, 1955 was in conformity with the prayer of the petition and did not purport to deal with anything else. Since we hold the order of August 9, 1955, to be invalid, the correctness or incorrectness of the amount of the monetary award is now a moot question.

It follows from the views above stated that the orders of February 17, 1955, and August 9, 1955, must also be reversed. We think, however, that the costs of this proceeding both in this court and in the trial court should be paid by the appellant.

> *Order dated February 17, 1955, allowing alimony pendente lite, reversed;*
>
> *Order dated August 9, 1955, finding appellant in contempt and allowing monetary decree for alimony in arrears, reversed;*
>
> *Decree dated June 21, 1955, awarding custody, reversed;*
>
> *Costs in this court and in the circuit court to be paid by the appellant.*