## GREGG *v.* GREGG

[No. 39, September Term, 1959.]

*Decided November 17, 1959.*

580

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Allan H. Fisher, Jr.,* for the appellant.

*Hugh J. Monaghan, II,* for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court No. 2 of Baltimore City which ordered that a decree of divorce granted the appellant, Gerald Gregg, by a Nevada court be declared null and void because the appellant failed to establish domicile in that state, that the appellant be held in contempt of an order of the Circuit Court No. 2 relating to the payment of alimony, and that a money decree for the alimony past due be entered against the appellant. Appellant contends that the Nevada court had jurisdiction to issue the divorce, and that even if it did not the appellant should not be held in contempt because the duty to make payments under the Maryland decree ceased until the Nevada decree was declared invalid, and that the appellant should no longer be required to pay alimony because the appellee's income is sufficient to support herself.

The Greggs were married in Washington, D. C. in 1938. During the ensuing years they lived in various cities. From 1947 to 1950 the parties resided in Washington, D. C. In 1950 they separated and the appellant moved to Baltimore. (The Chancellor's opinion states that the parties lived together in Baltimore from 1947 to 1953, but both parties agree that the above resumé of residence is correct.) In 1951 the appellee obtained a decree from the Circuit Court No. 2 of Baltimore City ordering the appellant to pay her $38 per month for permanent alimony. On January 8, 1953, the appellant arrived in Las Vegas, Nevada. Six weeks later, on February 20, 1953, the appellant filed suit for divorce against his wife, the appellee, and on March 28, 1953, the divorce was granted by the Nevada court. The appellee was not served personally in Nevada nor did she appear in the proceedings. The appellant remained in Nevada until August

of 1954, was in South Carolina and Oklahoma until 1955, returned to Nevada in 1955 and remained there until 1958, after which he returned to Maryland. The present proceeding was instituted by the appellee on January 6, 1959 and the lower court's decree declaring the divorce null and void and ordering payment was filed March 23, 1959.

The appellant's first contention is that the Chancellor was erroneous in his finding that the Nevada court did not have jurisdiction because domicile in conformity with the Nevada statute was not established. Nevada law requires that plaintiff in a divorce action must be a resident of the State six weeks prior to the commencement of the action, and that the fulfillment of the residence requirement is a *sine qua non* of jurisdiction for the Nevada court. Nev. Rev. Stats. (1957), 125.020. This statute has been interpreted as requiring the plaintiff to have the intention to make Nevada his home, at least for an indefinite period. *Latterner v. Latterner,* 51 Nev. 285, 274 P. 194; *Williams v. North Carolina,* 317 U.S. 287. Thus one must have an intent to become a *bona fide* domiciliary. *Colby v. Colby,* 217 Md. 35, 141 A. 2d 506.

Unless there is an estoppel, the absent defendant may collaterally attack the jurisdictional issue. *Colby v. Colby, supra; Brewster v. Brewster,* 207 Md. 193, 114 A. 2d 53; 3 Nelson, *Divorce,* § 33.69 (2d Ed., 1945).

Much evidence was introduced at the trial below concerning appellant's activities after his arrival in Nevada, particularly as to getting a job, buying a house, and other activities evidencing an intention to make Nevada his permanent home. All of this evidence, except that of procuring employment, related to activities occurring after the divorce. Such evidence was apparently intended to refute the claim that his stay in Nevada was merely a temporary sojourn, even though an extended one. *Naylor v. Naylor,* 217 Md. 615, 143 A. 2d 604. Such evidence would ordinarily have weight in determining what had been the intention of the plaintiff with regard to domicile at the time of the original divorce proceeding. The appellant's difficulty in the instant case is that he himself admitted that he went to Nevada solely for the purpose of obtaining a divorce, and did not make up his mind to make Ne-

vada his permanent home until after he had been in Nevada for about a month. This testimony conflicted with his testimony in the Nevada court, a copy of which is included in the record in this case, that he had an intention to make Nevada his permanent home when he moved there on January 8, 1953. By the appellant's own admission in the instant case, then, he did not intend to remain permanently in Nevada until only two weeks prior to his filing of a bill of divorce in the Nevada court and this was not enough to satisfy the terms of the Nevada statute as to the length of residence required to establish jurisdiction to render a divorce. Furthermore, the Chancellor did not even accept the statement of the appellant that he resolved to remain permanently in Nevada one month after arriving there. He was of the opinion that appellant did not make up his mind to reside permanently in Nevada until after the divorce was granted. We cannot say that the Chancellor was clearly in error in so concluding. In either view as to the time when the appellant decided to make Nevada his home (the appellant's own or the Chancellor's), the residence requirement was not met and the decree declaring the divorce null and void must be affirmed.

Appellant also objects to the finding of the Chancellor that appellant was in contempt of the alimony order. He states that he had a right to rely on *Brewster v. Brewster,* 204 Md. 501, 105 A. 2d 232. He interprets that case as saying that one subject to an alimony decree can refrain from making the alimony payments until a divorce procured by that party in a foreign jurisdiction is declared invalid, and only a refusal to make payments after the declaration of invalidity can put one in contempt of the order to pay alimony. Appellant misconstrues the first *Brewster* case, and neglects to read it in connection with the second case of the same name reported in 207 Md. 193, 114 A. 2d 53. The first *Brewster* case held that the decision of the Chancellor against the husband, who received an Arkansas divorce, for alimony due and finding him in contempt of its earlier alimony decree was not proper until the validity of the Arkansas divorce decree was adjudicated. This Court concluded that if the Arkansas decree were invalid then the Chancellor could enter the same decree as

was then being reversed. The Chancellor, on a further hearing, proceeded to find the Arkansas divorce invalid and entered the same decrees as before, for money for past due alimony and holding the husband in contempt for failure to obey its orders. These actions were affirmed by this Court in *Brewster v. Brewster, supra,* 207 Md. 193, 114 A. 2d 53. This Court held that once the Arkansas decree was declared invalid, it followed that the jurisdiction of the Maryland court was not ousted and all the orders based thereon were valid. Hence, the failure of the husband to comply with these orders made him subject to the money decree and contempt finding. The same principles apply in this case. A finding that the Nevada decree was void made the appellant liable for past alimony and in contempt of the alimony order. Appellant sets up as a defense a decree void *ab initio,* which is no defense at all.

Appellant also complains that because of the increase in the income of the appellee the appellant should be relieved of paying past due or future alimony. The same contention was raised in the second *Brewster* case which this Court answered in the following manner: "Finally, the contention that the Chancellor erred, in dismissing his petition for reduction in the amount of alimony, is without merit for the reason that the appellant was in default and in contempt." *Brewster v. Brewster, supra,* 207 Md. at 202. Even if the appellant were not in default or contempt the amount of alimony is in the discretion of the lower court. *Waters v. Waters,* 191 Md. 436, 62 A. 2d 250. Appellant cites that case in support of his contention. In that case, however, the husband's and wife's incomes were approximately equal, yet this Court sustained monthly alimony almost twice as much as the award in the instant case. We do not find any abuse of discretion by the Chancellor.

Lastly, appellant argues that the appellee is guilty of laches in failing to seek enforcement of the alimony decree for almost six years. Laches, as is said in *Gold v. Gold,* 191 Md. 533, 538, 62 A. 2d 540, is a relative defense dependent not only upon the passage of time but also upon reasons that justify the complainant in allowing such time to run without

taking action. The absence of the husband from the jurisdiction is one of the important circumstances. *Winkel v. Winkel,* 178 Md. 489, 15 A. 2d 914; *Marshall v. Marshall,* 164 Md. 107, 163 A. 874. The appellant here was absent from Maryland for the period in which the appellee took no action to enforce the alimony decree. During this time the appellant lived in or stayed for a period of time in five different states, not counting Maryland or return moves to Nevada. It could hardly be expected that a burden be on the wife to follow the travels of her husband to collect the alimony or else be guilty of laches. Moreover, no prejudice is shown to the appellant from the delay in enforcement. The fact that during this period the appellant took on new marital obligations does not excuse him from liability under the original alimony decree. *Marshall v. Marshall, supra.*

For the reasons stated above the decree is affirmed.

*Decree affirmed, with costs.*