393 P.2d 257

In the Matter of the Custody of Harry Bradford CLAY, IV, and Shelly Diane Clay, minor children of Ellen Clay, now known as Ellen Farmer.

Ellen CLAY, now known as Ellen Farmer, Appellant,

v.

Harry B. CLAY, III, Appellee.

No. 7274.

Supreme Court of Arizona.

En Banc.

June 18, 1964.

Ryley, Carlock & Ralston, Phoenix, for appellant.

Minne & Sorenson, Charles A. Filler and Marshall W. Haislip, Phoenix, for appellee.

ROBERT O. ROYLSTON, Judge of the Superior Court.

This is an appeal from a Maricopa County Superior Court ruling on a Writ of Habeas Corpus placing minor children in the custody of their father.

Ellen Farmer, appellant, the mother of Harry Bradford Clay, IV, and Shelly Diane Clay, was the petitioner, and Harry B. Clay, III, appellee, their father, was the respondent. They will be designated herein as "mother" and "father".

The mother and father were married January 15, 1949; Harry B. Clay, IV, was born December 16, 1949, and Shelly Diane Clay was born February 13, 1952. The mother and father lived in New Jersey from the time of their marriage, and the children were both born there and continued to live there until their removal to Arizona in May, 1960. In May, 1956, domestic difficulties caused the mother and father to separate and live apart. In December, 1956, the children were placed by the father with his parents and remained there until coming to Arizona.

The mother commenced a proceeding in the Chancery Division of the Superior Court of New Jersey against the father and his parents to determine her custody rights. On June 5, 1958, that court awarded temporary custody of the children to their paternal grandparents, Harry B. Clay, Jr. and Alice M. Clay.

On December 15, 1958, the father filed for divorce in New Jersey, but evidently never pursued the matter to trial, or to judgment.

On January 12, 1960, the father obtained a divorce in Alabama with the knowledge and consent of the mother. That decree awarded custody of the children to the father. But since the parties agreed that the children were never in the State of Alabama, neither seriously contends that the Alabama decree is binding as to custody. Within one month thereafter, the mother and father had each married their present spouses. The minor children remained with their paternal grandparents until May 26, 1960, at which time their paternal great grandparents brought them to Phoenix, where the children's father was residing with his present wife.

Thereafter, on August 3, 1960, the mother went to New Jersey from her home in California and obtained an order granting

her temporary custody for a period of one month. This order was issued in the same action which had originally placed temporary custody in the paternal grandparents. The mother then came to Phoenix and petitioned for a Writ of Habeas Corpus and Order to Show Cause, asking that the children be taken from the father and placed in her custody, pending further order of the New Jersey Court.

At the hearing, the trial court, over the mother's objection, received evidence relating to the issue of which parent should have custody. The trial court determined, " * * * that the best interests and welfare of the minor children * * * would be best (sic) served by placing the care, custody and control of said minor children * * *" in the father.

The mother contends that the trial court erred in the following respects: failing to give full faith and credit to the August 3, 1960, order of the New Jersey Court granting temporary custody to the mother; assuming plenary jurisdiction over the status of the children and proceeding to hear and determine the matter of custody on the basis of the best interest and welfare of the minors; determining that the father should have the custody of the children; and failing to grant a motion for new trial.

The first two assignments of error will be discussed together. The question pre-sented to us is as follows: On a Writ of Habeas Corpus, is the trial court empowered to determine custody of children temporarily within the State of Arizona, particularly if there is an award of custody outstanding in another state? Our court was not faced with this particular question in Schuster v. Schuster, 75 Ariz. 20, at 24–25, 251 P.2d 631, at 634, but this court stated:

"[T]he right and duty of an equity court to protect the personal and property rights of an infant is ordinarily limited to those infants within the *geographical* jurisdiction of the court. * * *

"Following the above-mentioned principles, the state of Nebraska, in the case of Geary v. Geary, 102 Neb. 511, 167 N.W. 778, 20 A.L.R. 809, determined the issues respecting an infant within its jurisdiction, acting in the role of parens patriae, and held that it did not consider itself bound by any prior judgment on the same issues rendered by an Iowa court since the infant was no longer in Iowa, thereby denying that state the right to continue in the role of parens patriae. In a similar situation the state of Colorado assumed to protect an infant within its borders, notwithstanding the fact that the infant's legal residence was in another state, presence within the court's jurisdiction being the basis of the assump-

tion of the role of parens patriae. Mc-Millin v. McMillin, 114 Colo. 247, 158 P.2d 444, 160 A.L.R. 396. Another case following the same rule, emphasizing the necessity of the infant's presence within the jurisdiction of the court as the basis of acting on its behalf, is: People ex rel. Wagner v. Torrence, 1933, 94 Colo. 47, 27 P.2d 1038."

This last cited case, Wagner v. Torrence, supra, concerns a habeas corpus proceeding where the minor children had been brought to Colorado from the State of Wisconsin in violation of a specific court order requiring the children to be kept in Wisconsin. The Colorado court heard all matters concerning the welfare of the children and determined that the mother should have custody and could keep the children in Colorado.

From this court's statement in Schuster v. Schuster, supra, it is apparent that the court has indicated that where the welfare of minors is concerned, the jurisdiction of the court shall be determined upon the presence of the minors within the geographical limits of the state. This appears to be not only the more logical view, but also the majority view.

"The majority of the jurisdictions hold to the view that even though there is a valid foreign custodial decree outstanding, the court, as the state's agency exercising the prerogatives of parens patriae, has power to award custody of a child domiciled elsewhere and only temporarily within the state, even if the child has been taken into the state in contravention of a judgment or injunction order against removal from the foreign state or in contravention of visitorial rights contained in the judgment." 4 A.L.R.2d 55

This rule has been followed by the California courts in Ex parte Memmi, 80 Cal. App.2d 295, 181 P.2d 885, at 888, wherein it is stated:

"Ordinarily, when a minor child is within this jurisdiction, the courts of this state are empowered, notwithstanding a judgment, decree or order of the courts of a sister state, to inquire into and determine in their own behalf what are for the best interests and what will best promote the welfare of a minor child. An award of custody of a minor child of divorced parents to either party in a divorce proceeding has no permanent finality, and is later subject to change and modification by the court wherein it was made. This rule is applicable not only to orders made by California courts, but to such

former orders of courts in other states."

Counsel for the mother contends that the adoption of the above rule in Arizona will lead to a multitude of suits brought by quarreling divorced parents who have received an unfavorable ruling on custody in another state, and come to Arizona only for the purpose of litigation. Of course, the trial judge must determine whether the custodial question is legitimately within the jurisdiction of courts of Arizona, or if the parents are here solely for the purpose of litigation. But wherever it appears that the court should inquire into custodial rights in order to promote the best interest and welfare of minor children, our courts should not hesitate to assume such responsibility.

The trial court took judicial notice of § 9:2–2, New Jersey Statutes Ann., which reads as follows:

"When the Superior Court has jurisdiction over the custody and maintenance of the minor children of parents divorced, separated, or living separate, and such children are natives of this State, or have resided five years within its limits, they shall not be removed out of its jurisdiction against their own consent, if of suitable age to signify the same, nor while under that age without the consent of both parents, unless the court, upon cause shown, shall otherwise order. The court, upon application of any person in behalf of such minors, may require such security and issue such writs and processes as shall be deemed proper to effect the purposes of this section."

Counsel for the mother contends that the actions of the father constitute a violation of that statute and that, therefore, the children being in the State of Arizona in contravention of the New Jersey statute, the Arizona court should not conduct a plenary hearing on the question of custody. The trial court heard disputed evidence as to whether the parents consented to the removal of the children. Although the trial court might consider the conduct of a parent with respect to any statutory violation, this violation would appear to be no more serious than contravention of a judgment or court order. Therefore, a violation of this statute, although the New Jersey courts might pursue the violation further, would have no controlling effect on whether the trial judge here should conduct a plenary hearing.

As to the third assignment of error concerning the trial court's determination that the father should have the custody

of the children, it has been stated by this court on many occasions that the trial court's judgment as to the best interest of a child cannot be set aside unless it clearly appears that the court abused its discretion, Ward v. Ward, 88 Ariz. 130, 353 P.2d 895. This court should not substitute its opinion as to which parent should have custody, and although the members of this court, as trial judges, might not necessarily have awarded the custody to the father, the record does not reflect a clear abuse of discretion by the trial judge.

As to the last assignment of error concerning the denial of a motion for new trial, the record reveals that there was no substantial ground on which the court should have allowed a new trial.

The judgment is affirmed.

UDALL, C. J., LOCKWOOD, V. C. J., BERNSTEIN, J., and FRANK X. GORDON, Jr., Superior Court J., concur.

NOTE: Justices FRED C. STRUCKMEYER, Jr., and RENZ L. JENNINGS, having disqualified themselves, Superior Court Judges ROBERT O. ROYLSTON and FRANK X. GORDON, Jr., were called in to sit in their stead and participate in the determination of this appeal.