406 P.2d 253

In the Matter of the GUARDIANSHIP of the Person OF Dana Lynn RODGERS, a Minor.

Application of Dana Lynn RODGERS, by her legal Custodian, James Lee Rodgers.

James Lee RODGERS, Appellant,

v.

Catherina DE ARMAN, Appellee.

No. 2 CA–CIV 106.

Court of Appeals of Arizona.

Oct. 8, 1965.

Rehearing Denied Nov. 3, 1965.

Review Granted Dec. 28, 1965.

Skousen, McLaws & Skousen, by Richard E. Skousen, Mesa, for appellant.

Cavness, DeRose, Senner & Foster, by Tom C. Foster, Phoenix, for appellee.

MOLLOY, Judge.

This appeal arises out of litigation between a father and a mother over the right to custody of their child. The lower court, after a hearing on a writ of habeas corpus and on a petition for the appointment of guardian, which hearings were consolidated, awarded custody of the child to the mother.

The facts pertinent to this appeal are undisputed. The mother and father were divorced in the State of Texas on May 25, 1961. The decree awarded custody of the parties' minor daughter and son to the mother for a period of nine months out of each year, beginning the first day of September and ending the 31st day of May each year, and to the father for the remaining three months of each year.

After the decree, the mother removed herself to Arizona, remarried and, at the time of the hearing below, was a resident of Gila County, Arizona.

On August 20, 1964, the father, while the two children were in his custody under the terms of the decree of divorce, filed an action in the District Court of Montague County, Texas, for a change of the custody provision of the divorce decree. The mother was served personally in the State of Texas and entered a general appearance in this action, contesting the right of the father to the custody of the children. On September 4, 1964, the District Court of Texas awarded temporary custody of the two children to the father. On September 29, 1964, the mother in violation of an injunction prohibiting her from removing the children from the State of Texas, took the daughter, then aged six years, out of the State of Texas to Gila County, Arizona. The action in Texas came on regularly for trial on October 8, 1964. The mother did not appear and the court proceeded with the hearing. On October 9, 1964, the Texas court, in a written judgment, found that there had been a change of conditions since the original divorce decree of the District Court in May 1961, which required that for the best interests of the children their custody be given to the father, and so ordered. There was no appeal from that judgment.

On October 16, 1964, the father filed a petition for writ of habeas corpus in Gila County, Arizona, asking that the custody of the daughter be delivered to him in pursuance of the Texas decree. Thereafter the mother filed a petition for appointment as guardian of said minor child. The two petitions came on for hearing on October 28, 1964, before the lower court, which found that the Texas court had no jurisdiction to enter the order of October 9, 1964, and that the judgment entered was void on its face in that it purported to modify a divorce decree entered in a different county from that in which the action for custody was pending. The court further found that " * * * the present conditions and circumstances of the petitioner, Catherina DeArman [the mother], are adequate and are in the best interests of the child." The court therefore entered an order quashing the writ of habeas corpus and granting the petition of the mother to be appointed guardian of the person of the daughter.

There is no contention made on appeal that there was any showing of a change in circumstances between the time of the Texas decree and the trial below. Hence, this appeal tests whether a court of this state may change the custody of the minor child from that determined by a judgment of a sister state when there has been no substantive change in circumstances since the rendition of the out-of-state judgment.

On appeal, the appellant contends, and the appellee does not deny, that the Texas court had jurisdiction to determine that it was in the best interests of this child that her custody be given to her father. Once the authenticated decree of the Texas court had been admitted in evidence, a presumption arose of the validity and regu-

larity of this decree. 50 C.J.S. Judgments § 893 b, p. 500; 30A Am.Jur. 315 Judgments § 247; Varnes v. White, 40 Ariz. 427, 12 P.2d 870 (1932).

No evidence having been introduced at the hearing below to challenge the validity of the Texas judgment, and there being no contention on this appeal that that judgment was not valid, this court is foreclosed from upholding the trial court on the primary basis for its ruling below.

In defense of the decisions below it is urged that in a child custody proceeding a judgment of a court of a sister state is not binding upon a court of this state. The only case cited in support of this contention is In re Clay, 96 Ariz. 160, 393 P.2d 257 (1964), which, the appellee contends, holds that, regardless of what a sister state has decided about the custody of a child, if the problem of custody comes before one of our courts, the court must decide the case afresh, without being controlled by the prior adjudication.

■ This court has read In re Clay carefully and cannot agree that this is the holding of the case. The problem presented in determining whether there must be a change in circumstances in order to alter any child custody order, whether out-of-state or domestic, is one involving the doctrine of res judicata.

"The change of circumstances rule as a limitation on modification of a divorce decree is one aspect of the principle of res judicata." Ward v. Ward, 88 Ariz. 130, 134–135, 353 P.2d 895, 898 (1960).

The Clay decision does not discuss this aspect at all, but concerns itself only with the problem of jurisdiction. In Clay, the Supreme Court stated what it conceived to be the problem before it:

"The question presented to us is as follows: On a Writ of Habeas Corpus,

is the trial court empowered to determine custody of children temporarily within the State of Arizona, particularly if there is an award of custody outstanding in another state?" 96 Ariz. 160, 162, 393 P.2d 257, 259 (1964).

■ This court does not believe that the Supreme Court intended by this decision to hold that matters litigated before a New Jersey court, if there was jurisdiction over the parties and over the children,[1] would not be res judicata upon the same parties as to the same issues in this state. The overwhelming weight of authority in this country seems to be that a decree of a sister state determining custody of children will be enforced, absent a change in circumstances, either under the full faith and credit clause of the Federal Constitution (Art. 4, § 1) or under principles of comity. The following is the general law on the subject:

"A valid decree determining custody will be regarded as binding and will be enforced in all jurisdictions; and a party cannot escape the effect of the decree by removing from, or staying without, the state whose courts issued the decree. However, the courts of another state have the power to make a different award where there has been a change in the circumstances, warranting such change." 67 C.J.S. Parent and Child, § 13, p. 686.

Some of the more recent decisions applying this law are: Brown v. Stevens (1964), 118 U.S.App.D.C. 57, 331 F.2d 803; Rethorst v. Rethorst, 214 Md. 1, 133 A.2d 101 (1957); People ex rel. Potter v. Potter, 2 Ill.App.2d 419, 120 N.E.2d 46 (1954); In re Bergmann, 133 Cal.App.2d 323, 283 P.2d 1063 (1955); Moloney v. Moloney, 167 Kan. 444, 206 P.2d 1076 (1949); Belden v. Strickland, 218 Ga. 105, 126 S.E.2d 670 (1962); Frazier v. Merrill, 237 Ark. 242, 372 S.W.2d 264 (1963); Richter v. Harmon,

---

1. In the Clay decision, there is the unanswered question of when the last valid order of the New Jersey court was entered, inasmuch as the order upon which the appellee-mother relied was one entered after the children had become residents of Arizona.

243 N.C. 373, 90 S.E.2d 744 (1956); Ford v. Ford, 239 S.C. 305, 123 S.E.2d 33 (1961), reversed on other grounds, 371 U.S. 187, 83 S.Ct. 273, 9 L.Ed.2d 240 (1962); Ogletree v. Crates, 363 S.W.2d 431 (Sup.Ct. Tex.1963).

One court has taken the view that though the full faith and credit clause of the Federal Constitution does not require that a state give respect to an out-of-state judgment on custody, nevertheless comity does require that the out-of-state decree be enforced in the absence of a change in circumstances. In re Adoption of Infant Vermeulen, 114 So.2d 192 (Fla.App.1959).

Though In re Clay does not in its language expressly negate the interpretation given it by the appellee, the citations relied upon therein do. The Clay opinion quotes with approval Schuster v. Schuster, 75 Ariz. 20, 24–25, 251 P.2d 631, 634, which quotation cites with approval Geary v. Geary, 102 Neb. 511, 167 N.W. 778, 20 A.L.R. 809 (1918) and McMillin v. McMillin, 114 Colo. 247, 158 P.2d 444, 160 A.L.R. 396 (1945).

A reading of these two cases is very enlightening. In Geary, the Nebraska court held:

> "The Nebraska court is only required to give to the Iowa judgment the effect to which it is entitled in Iowa." 167 N.W. 778, 779.

There is nothing in Geary to indicate anything but an observance of the general rule. McMillin is in the same vein. The court said (158 P.2d 444, 445–446):

> "The Michigan court had jurisdiction over both respondent and the child in the divorce proceeding, since all were domiciled and present in that state when the action was begun and respondent appeared and was represented by counsel therein. This jurisdiction included not only the issue of divorce, but of support and custody as well. We think the better rule is that, jurisdiction once having attached was not divested by any change of domicile as to the final decree of divorce and the

award of custody in that decree. State v. Rhoades, 29 Wash. 61, 69 P. 389; Beale, Conflict of Laws, vol. 2, p. 717, § 144.3. The child became thereby the award of the court. McGonigle v. McGonigle, 112 Colo. 569, 151 P.2d 977. *Such an award of custody by a court having jurisdiction should be recognized by other states and the facts upon which the award was based held res judicata.* Beale, supra, p. 719, § 147.1; Groves v. Barto, 109 Wash. 112, 186 P. 300; In re Jiranek, 267 App.Div. 607, 47 N.Y.S.2d 625; Cook v. Cook, 77 U.S.App.D.C. 388, 135 F. 2d 945; Jones v. McCloud, 19 Wash.2d 314, 142 P.2d 397; Restatement of the Law, Conflict of Laws, § 147." (Emphasis added.)

The only other case quoted by In re Clay is Ex parte Memmi, 80 Cal.App.2d 295, 181 P.2d 885 (1947). This case overturns a superior court decision failing to honor a New York decree. In Memmi, the court said (181 P.2d 885, 888):

> "Here as in the case just cited, no change is shown to have occurred relative to petitioner's condition or moral fitness since the date of the entry of the decree of the aforesaid New York court, nor does the order of the superior court show that any such change in petitioner's condition or moral fitness since such date was made to appear at the superior court hearing, or that any showing of changed conditions affecting the welfare of the child was made at such hearing or passed upon by the court. *Therefore, the decision of the New York court must be held res adjudicata until such change in petitioner's condition, or in circumstances affecting the welfare of the child is shown.*" (Emphasis added.)

This court is aware that the Supreme Court of the United States has so far avoided a holding on whether full faith and credit demands that a custody order be recognized throughout the Union. Ford v. Ford, 371 U.S. 187, 83 S.Ct. 273, 9 L.Ed.2d

240 (1962); Kovacs v. Brewer, 356 U.S. 604, 78 S.Ct. 963, 2 L.Ed.2d 1008 (1958); and People of State of New York ex rel. Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947). The court is further aware that Justice Frankfurter has expressed himself in a concurring opinion, May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 844–845, 97 L.Ed. 1221 (1953), and in a dissenting opinion, Kovacs v. Brewer, 356 U.S. 604, 78 S.Ct. 963, 966–970, 2 L.Ed.2d 1008, to the effect that the peculiar nature of deciding what is in the best interests of a child insofar as custody is concerned is such that it overrides the doctrine of res judicata and the full faith and credit clause of the Constitution.

As far as this court has been able to ascertain, this view of the late Justice Frankfurter has been adopted only in the State of New York. Bachman v. Mejias, 1 N.Y. 2d 575, 154 N.Y.S.2d 903, 136 N.E.2d 866 (1956).

▪ This court is not attracted to this view. Granted that a determination of the custody of children places upon a trial court as imposing a responsibility as it will ever have in any proceeding, nevertheless this does not merit, in this court's judgment, the rejection of the doctrine of res judicata. The doctrine is founded upon the sound principle that there should be some end to litigation, and that litigation is in itself damaging to its participants. And certainly litigation involving the custody of children poses no exception to the general rule that litigation is harmful. If it is damaging to keep the title to Black Acre in limbo, it is even more so to keep the custody of children in hiatus. This court agrees with the general statement found in the decision of Ogletree v. Crates, 363 S.W.2d 431 (1963), in which the Supreme Court of Texas upheld an Alabama custody decree and re-

versed a trial court's decision below changing custody:

> "As a matter of public policy there should be a high degree of stability in the home and surroundings of a young child, and, in the absence of materially changed conditions, the disturbing influence of constant re-litigation should be discouraged." 363 S.W.2d 431, 436 (1963).

▪ If there is any one field in which "second-guessing" should not be permitted, this should be the one. In no type of litigation are the results more apt to be different on retrial than in child custody matters. Not only is the evidence available for presentation to the court apt to vary considerably depending upon the community in which the trial is conducted, but the standards applied by the particular judge are apt to vary even more. Each judge trying child custody cases will be influenced by his own concepts of proper family life, child rearing and other intangibles. In no type of litigation is the trial court closer to "playing God" then when it decides a close question involving child custody. It is not felt that the last domestic judge to render a decision is in any closer communion with the Supreme Being than a judge of a court of another jurisdiction. Only the child can suffer from a rule that would disregard previous adjudications merely because the judge was not one of this state.

For the reasons heretofore stated, the judgments below are reversed and the case is remanded with instructions to order the custody of this daughter to be turned over to her father in pursuance of the writ of habeas corpus sought by him and that issuance of letters of guardianship as to the person of this child in the mother be revoked.

KRUCKER, C. J., and HATHAWAY, J., concurring.