## ECKARD *v.* GARDNER

[No. 389, September Term, 1968.]

*Decided October 9, 1969.*

172

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Bill L. Yoho,* with whom were *Robert S. Hoyert, Roy W. Hooten, Joseph F. McBride,* and *Hoyert, Yoho & Hooten* on the brief, for appellant.

*Paul M. Nussbaum,* with whom were *Reichelt, Nussbaum & Brown* on the brief, for appellee.

MCWILLIAMS, J., delivered the opinion of the Court.

Much extraneous detail has been omitted from our summary of this long and tedious record. It begins with

the 1955 divorce, in Prince George's County, of the appellant (Jean) from the appellee (James). Jean was awarded the custody of their three children. James was ordered to pay $120 per week for their (including Jean) "support and maintenance." James, within a month, married Mildred who had children of her own. She has had another child by James. Jean married Samuel Eckard in 1965.

In May 1967 Jean filed a petition in the 1955 divorce case alleging that James was in arrears in his payments from 1 January 1967 through April 1967 in the amount of $1,640. In his answer James cited Jean's marriage to Eckard, the emancipation of their daughter, Jean Odesa, and the fact that he had been supporting James, Jr. (Jimmie) since April 1964. He also recited a paragraph from a separation agreement, executed in October 1955 before the divorce but not mentioned in the pleadings, testimony or decree, which is as follows:

> "1. That the husband shall pay unto the wife the sum of $120.00 per week, for the support and maintenance of the said wife and their three (3) children, said payments to begin on the 7th day of October, 1955, and to continue until such time as the children of the parties shall become of age, marry or become self-supporting, whichever of said events shall happen sooner. Provided, however, that the wife shall pay the mortgage payments on the premises occupied by her and the children of the parties out of the above sum to be paid unto her by the said husband, and as the said mortgages are paid off the said husband and wife shall make adjustment in the payments to be made by the said husband unto the said wife accordingly."

He alleged that, at her request, he took back the house in February 1956 and that they agreed, since he would be making the mortgage payments, that the support payments would be reduced from $120 per week to $35 per

week. He also alleged that when he took over the custody and support of Jimmie she agreed to a further reduction to $25 per week and that upon the emancipation of Jean Odesa there was another reduction to $12.50 per week.

In December 1967 Jean amended her petition by alleging that the arrearages were not $1,640 but *"approximately $14,000"* and that they went as far back as 1 January 1958. (Emphasis added.) She admitted there had been a separation agreement, she did not question the accuracy of the paragraph quoted by James and she stated that the agreement also provided that it "may be made a part of any decree of court * * * or shall be disregarded in hold [whole] or part." The agreement is not a part of the record and it does not appear that it was before the court in the divorce proceedings.

In September 1968 Jean again amended her petition claiming that the arrearages were not *"approximately $14,000"* but *"approximately $64,296* from February 1956 through August 1968." (Emphasis added.) In her amended petition she asserted for the first time that James' custody of Jimmie being contrary to the 1955 decree constitutes a contempt; James says she asked him to take Jimmie because she could not control him. Oddly enough she did not, in any of her prayers for relief, ask that Jimmie be returned to her custody; nevertheless, much was made of it in this Court.

The record makes it quite clear that the trial judge, Parker, J., followed the testimony closely, that he weighed it carefully and that his decision reflects an earnest effort to do justice to the parties and at the same time subserve Jimmie's best interest and welfare. His order of 10 October is set forth in full:

> "This cause came on for hearing on the Plaintiff's Second Amended Petition to Adjudicate Defendant in Contempt of Order of Court for Support, Custody and Other Relief, and the Defendant's Answer thereto; and after hearing evidence in open court 19, 30 September and 1

October 1968, the Plaintiff and Defendant being represented by their respective counsel, the Court made the following findings of fact: (1) that the custody of James F. Gardner, Jr. should remain with the Defendant, with special limitations, and liberal visitation rights granted to the Plaintiff; (2) that other visitation rights should be granted to the Defendant concerning Robert John Gardner; (3) that the Court has interpreted Judge Charles C. Marbury's Decree of Divorce dated 27 December 1955 as providing One Hundred Twenty Dollars ($120.00) per week for the support of the Plaintiff and their three minor children and has allocated the sum of Thirty Dollars ($30.00) per week to the Plaintiff, and the sum of Thirty Dollars ($30.00) per week for each child; (4) that the Doctrine of Laches does apply in this case and that the Plaintiff has waited too long to recover arrearage payments from January, 1956, but for the purpose of fixing the monies which the Court feels are due and payable to the Plaintiff representing arrearages, the Court will go back to three (3) years prior to the filing of the present petition to adjudicate defendant in contempt of the court order of 27 December 1955 and will establish 12 May 1964 as the commencing date, that being three (3) years prior to filing the present petition, and from that commencing date the following formula will be used: For the Plaintiff, support and maintenance payments shall end as of the date she married her present husband, 25 July 1965; For the minor daughter, Jean Marie Odessa Gardner, support and maintenance payments shall end as of the date she became emancipated, 1 July 1967; For the minor son, Robert John Gardner, support and maintenance payments shall be computed through 29 September 1968;

and that there shall be no support and maintenance payments due for the minor son, James F. Gardner, Jr., as he was living with the Defendant during that period of time; and (5) that the sum of Thirty Dollars ($30.00) per week be paid to the Plaintiff for the support and maintenance of the minor child of the parties hereto, namely, Robert John Gardner, commencing 30 September 1968, subject to further Order of Court;

"IT IS, thereupon, this 10th day of October, 1968, by the Circuit Court for Prince George's County, Maryland, sitting in equity;

"ORDERED, that the care and custody of the minor child of the parties hereto, namely, James F. Gardner, Jr., remain with the Defendant, JAMES F. GARDNER, and that the Plaintiff, JEAN E. (GARDNER) ECKARD, shall have the minor child visit with her on the following days: Every Saturday from 9 o'clock a.m. until 8 o'clock p.m., one-half (½) of all holidays which the Plaintiff will alternate with the Defendant, and for a period of six (6) continuous weeks during the school vacation period; and it is further

"ORDERED, that the Defendant, JAMES F. GARDNER, is directed to obtain an expert opinion as to the necessity of speech therapy for the minor child of the parties hereto, James F. Gardner, Jr., and bring this matter to the further attention of this Court; and if the medical opinion indicates that speech therapy will be of assistance to said child, the Defendant is directed to obtain the necessary speech therapy through the school system of Prince George's County, Maryland; and it is further

"ORDERED, that the Defendant, JAMES F. GARDNER, shall have the minor child of the parties hereto, namely, Robert John Gardner,

visit with him for two (2) continuous weeks during the school vacation period as well as other reasonable rights of visitation; and it is further

"ORDERED, that the Defendant, JAMES F. GARDNER, pay to the Plaintiff, JEAN E. (GARDNER) ECKARD, the sum of Seven Thousand Seven Hundred Eighty-four Dollars ($7,784.00), representing arrearages in support and maintenance payments for the periods as set out elsewhere in this Order; and it is further

"ORDERED, that the Defendant, JAMES F. GARDNER, pay to the Plaintiff, JEAN E. (GARDNER) ECKARD, the sum of Thirty Dollars ($30.00) per week, as support and maintenance for the minor child of the parties hereto, namely, Robert John Gardner, accounting from the date of the hearing of this cause (30 September 1968), subject to further Order of Court; and it is further

"ORDERED, that the Defendant pay the costs of these proceedings."

Jean contends it was error for Judge Parker to order Jimmie to remain in the custody of James. We shall resist the urge to dub this an utter frivolity. Clearly, however, it is without merit and this seems an appropriate occasion to repeat what Judge Collins said for the Court in *Sibley v. Sibley*, 187 Md. 358, 362 (1946):

"In custody cases a grave responsibility is placed on the courts. The future of every infant is, of course, largely governed by its early training and environment. To say whether one or another close relative of an infant should have the custody is always a matter of serious concern. This Court on appeal can only exercise its best judgment from all of the facts presented in the case. We see none of the parties. The

> chancellor had the parties and the witnesses before him. He was able to observe their demeanor and general appearance while on the stand, to judge of their character, probable attitude toward and their probable influence over the infant. He also had the opportunity to talk to the infant. Unless there is some reason to the contrary, his findings ought not to be disturbed."

Both parties, we think, have gone adrift in their arguments in respect of Judge Parker's *"interpretation"* (emphasis added) of the decree of December 1955. It must not be supposed, however, that by affirming the order embodying that "interpretation" we have thereby adopted it as our own. Our review of the record has led us to the conclusion that the reductions in the monthly payments were agreed to by Jean. James so testified and his recital of the circumstances leading up to each reduction lends considerable plausibility to his testimony. We expected to find somewhere in Jean's testimony a flat denial that any such agreements were reached, especially as they were carefully spelled out in James' answers to her petitions, but we have observed nothing more than a few disparaging remarks aimed at James and Mildred. Perhaps the most persuasive evidence that she agreed to the reductions arises out of her failure to take any action against James for 12 years. Indeed in her first petition she sought to recover only $1,640. What induced her to raise her sights to $14,000, and finally to $64,296, we cannot say. The record reveals nothing more than a change of counsel after the filing of the amended petition.

Judge Parker, in arriving at a decision, might very well have followed *Rethorst v. Rethorst,* 214 Md. 1 (1957), in which Chief Judge Brune, for the Court, said:

> "By the informal agreement between the parties which subsisted for two and a half years the order to show cause was superseded and allowed to lapse. The wife made no effort to bring

her case to trial and was content to accept the $200 [$100 less than the award] a month paid under the agreement. Laches and acquiescence would seem to bar her attempt to revive a claim based on the 1952 order * * *." *Id.* at 15.

To the same effect *see Dandridge v. Dandridge,* 17 Misc. 2d 356, 183 N.Y.S. 2d 263 (Sup. Ct. 1959), and *Brandt v. Brandt,* 276 F. 2d 488 (D.C. Cir. 1960).

It is at once apparent that the effect of the rationale he did adopt is an award to Jean vastly greater than would have been possible under *Rethorst.* However, since James, by failing to appeal, seems satisfied to abide by Judge Parker's order, there is no reason why we should do more than call attention to his failure to provide for a counsel fee. In this regard we think an upper limit of $350 is reasonable and we shall assume that a petition for a supplementary order will be presented in due course for the court's consideration and disposition.

*Order affirmed.*
*Costs in this court to be paid*
*by the appellant.*