## LEWYN WEAVER, JR. *v.* MILDRED (WEAVER) GARRETT

[No. 140, September Term, 1971.]

*Decided October 27, 1971.*

The cause was argued before THOMPSON, POWERS and GILBERT, JJ.

*Walter I. Seif, Jr.,* with whom were *Gordon & Goodman* on the brief, for appellant.

*Martin B. Levinson,* with whom were *Cweiber & Edelstein* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

Lewyn Weaver, Jr. (Weaver), appellant, and Mildred Garrett (Garrett), appellee, were divorced on April 13, 1966. By the terms of the decree of divorce Weaver was required to pay unto Garrett $10.00 per week for the

support and maintenance of each of four minor children. When the petition to cite Weaver for contempt was heard before a Master in Chancery, Lucy Ann Garvey, Weaver was $6810.00 in arrears. A total arrearage of $4960.00 was for the years 1968, 1969 and half of 1970, and $1850.-00 of the arrearage was accumulated in 1966 and 1967. Both parties to this case had remarried prior to the filing of the Petition to Cite for Contempt.

The record discloses that Garrett's counsel wrote to Weaver on February 24, 1970, as follows:

> "The time has now come for your children to be legally adopted by their step father, Mr. William Garrett. It is necessary at this time for you to sign a waiver which must be filed in the court.
>
> "I have sent this form to Mr. and Mrs. Garrett and have instructed them to visit you at their earliest convenience in order that you might sign same. I want you to know at this time that I will, without hesitation, bring action against you for the arrears of non-support for said children if you do not cooperate with Mr. and Mrs. Garrett and sign the aforementioned paper."

Thereafter, Weaver obtained the services of an attorney. On April 24, 1970, counsel for Garrett wrote to Weaver's counsel,

> "I received this date a letter from Mr. and Mrs. Garrett who state that they will positively not sign any release waiving the obligation for the arrears of your client Mr. Weaver until he has executed the Petition for Adoption. I believe you have the aforementioned in your file, if not Mr. Weaver can give you same.
>
> "I would like for you to have your client execute this Petition for Adoption and forward same back to me, and I will at that time for-

ward to you a release in this matter. You will have to trust me and take my word as an attorney that I will guarantee you a release in this matter. If we cannot proceed along these lines I guess we will have no other alternative than to bring Mr. Weaver in for non-support of payments * * *."

In early June, 1970, Garrett's attorney again wrote to Weaver's counsel:

"I have just spoken with my clients, * * * and at this time they are not prepared to file the Petition for Adoption due to the fact that they have to assign a waiver disallowing Mr. Weaver any right to be brought into court for arrears owed. As I told you in our last conversation I would not file the Petition for Adoption under these circumstances. Mrs. Garrett tells me that she would like to file the Petition for Adoption and would not press the issues of arrears as she would like for her daughter to make that decision on her own.

"I have no other alternative at this point, Walter, than to file Petition for Contempt based on the $7,000.00 arrears due in owing Mrs. Garrett for the support of four minor children."

The document executed by Weaver was not made a part of the record.

A "Petition for Contempt Citation" was filed on June 17, 1970, and the "Answer" thereto was timely. The matter was heard before the Master on July 6, 1970.

The Master concluded that Weaver was in arrears and recommended a monetary judgment of $1850.00 against him for the years 1966 and 1967. She also recommended "a reasonable lump sum payment on account of the arrears due" and that the sum of $20.00 per week be paid on the arrearage in addition to the sum of $40.00 per week ordered by the April 13, 1966 decree.

Weaver filed "Exceptions" to the Master's recommendations. On April 5, 1971, Judge Prendergast overruled the Exceptions, ordered that a lump sum payment of $1,000.00 be made within 10 days, adopted the Master's recommendation as to the increased weekly payments, and rejected the monetary judgment. From Judge Prendergast's findings, Weaver appeals to this Court.

Weaver contends that the Chancellor erred in finding that any arrearage was due from Weaver to Garrett. Simply stated, Weaver says that when he executed the "Consent for Adoption" he undertook some act or forbearance that was or could be detrimental to him, and beneficial to Garrett. This, Weaver says, is a valuable consideration moving from him to Garrett, and thus a valid contract arose. According to Weaver, the letter of April 24, 1970 from Garrett's attorney to Weaver's counsel constituted a complete release inuring to Weaver's benefit the moment Weaver signed the "Consent for Adoption." [1]

Appellant refers us to *Eckard v. Gardner*, 255 Md. 171, 257 A. 2d 174 (1969). In that case, the Court of Appeals affirmed an order of the trial court awarding to the ex-wife an increase in child support even though laches and acquiescence seemed to have barred her effort to recover arrearages due on the alimony and child support. Appellant argues that if a mother can waive her children's

---

1. Although the point was not raised, Article 16, § 74 of the Maryland Code provides:

"Every petition for adoption shall be accompanied by written statements of consent," which are to be subscribed and sworn. "Consent to any proposed adoption shall be obtained from: * * * (b) Both the natural parents, if married, if they are alive and have not lost their parental rights through court action or voluntary relinquishment or abandonment; * * * Any consent obtained under the provisions of this section may be revoked and cancelled at any time before final decree, but not after a guardianship decree under § 72 above, if one be had, or not after an interlocutory decree, if one be had."

No guardianship or interlocutory decree was involved in this proceeding. See *Haney v. Knight*, 197 Md. 212 (1951). It would appear that Weaver's consent was in the nature of an illusory promise until the signing of the decree of adoption.

right to support by her failure to act, she can also contract away their right to support.[2]

The Court of Appeals in *Zouck v. Zouck,* 204 Md. 285, 300 (1954), speaking through Judge Hammond (now Chief Judge), answered the contention here made by Weaver. There the Court held, in allowing the invasion of a spendthrift trust for payment of child support:

> "In the case of a child, the obligation of the father to support, imposed by law, cannot be bargained away or waived. Any provision of an agreement for the child may be disregarded by a court, which can increase or decrease an allowance for support." See also *Boggs v. Boggs,* 138 Md. 422, 428-435 (1921); *Melson v. Melson,* 151 Md. 196, 206 (1926).

Child support is not a debt, but a duty. Article 3, § 3, Constitution of Maryland; Article 72A, § 1; *Speckler v. Speckler,* 256 Md. 635 (1970); *Dackman v. Dackman,* 252 Md. 331 (1969); *McCabe v. McCabe,* 210 Md. 308 (1956). The right to child support may be barred by the doctrine of laches, *Eckard, supra.* Under the circumstances of this case we hold that the duty was not released by the contractual agreement between the parents. A decree of adoption would, of course, eliminate the duty by the father to support the minor children *in futuro* only.

> *Order affirmed.*
> *Costs to be paid by appellant.*

---

2. Weaver's argument fails to consider the possibility that the court before which the adoption proceeding was pending may not have approved the adoption. Under such circumstances, if Weaver's argument were valid, the children would ostensibly be left without means of support.