HOWARD SCHAFR and HELEN R. SCHARF, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Scharf v. Commissioner
Docket No. 3905-71.
United States Tax Court
T.C. Memo 1973-272; 1973 Tax Ct. Memo LEXIS 17; 32 T.C.M. (CCH) 1281; T.C.M. (RIA) 73272; December 10, 1973, Filed. Sylman I. Euzent, for the petitioners. Howard L. Williams, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Year
Deficiency
1965
$2,290.63
1966
2,097.52
1967
324.54 2 The issues for our decision are (1) the amount of the casualty loss petitioners sustained on their household contents as a result *18 of the destruction of their residence by fire; (2) whether petitioners are entitled to any deduction for the personal property of their children destroyed in the fire; and (3) whether respondent's disallowance of a portion of petitioners' claimed casualty loss on their real property is barred by the statute of limitations. FINDINGS OF FACT Some of the facts are stipulated and are so found. Petitioners are husband and wife who, at the time of the filing of the petition herein, resided in Gaithersburg, Maryland. They timely filed joint tax returns for the calendar years 1965 through 1968, with the district director of internal revenue, Baltimore, Maryland. On December 18, 1968, petitioners' residence located at 417 Twinbrook Parkway, Rockville, Maryland, and its household contents were destroyed by fire. They had purchased the real property on June 11, 1959, for $17,526 and subsequently added total improvements in the amount of $2,950 for a total cost basis of $20,476 in the property. As a result of the destruction of their property by the 3 fire, they received payments of $15,950 from their insurance company. [1]
*19 At the time of the fire petitioners' two children, Rick and Michel, resided at home and received most of their support from their parents. Rick was 21 years old, attended the University of Maryland, and worked occasionally as a musician. Michel was 20 years old and for a short period of time worked part-time in a hospital. Approximately one month after the fire petitioners prepared an inventory of household contents destroyed by the fire. The inventory was prepared from memory by petitioners and their children by recalling the contents of each room of their house. The inventory listed the approximate date of purchase, cost, and petitioners' estimate of the fair market value of each item of property. On their 1968 income tax return petitioners claimed a casualty loss of $50,131 as follows: 4 Fair market value of real property before fire
$31,000.00
Fair market value of real property after fire
7,500.00
Total loss on real property
23,500.00
Less:Insurance reimbursement
15,950.00
Net loss on real property (cost $20,476.00)
7,550.00
Add:Cost of razing and clearing debris
2,600.00
Fair market value of personal property
40,081.00
Total Casualty loss
50,231.00
Less: Non-deductible limitation
100.00
Total Deductible Casualty Loss
$50,131.00
*20 Petitioners also submitted an application for a tentative carryback adjustment for the years 1965 through 1967 to reflect the net operating loss resulting from their claimed casualty loss in 1968. In his notice of deficiency respondent disallowed petitioners' claimed casualty loss to the extent of $31,755.19 and determined that they were not entitled to any net operating loss deductions for the years 1965 through 1967. Respondent's reduction of petitioners' claimed casualty loss resulted entirely from his partial disallowance of the claimed deduction on personal property. On January 17, 1973, respondent filed a motion for leave to file an amendment to his answer, which was granted by this Court. In his amended answer respondent determined an additional disallowance of petitioners' claimed casualty loss in the amount of $3,024, on the basis that petitioners did not use the lower of fair market value or adjusted basis in calculating their loss 5 on real property. Respondent calculated petitioners' loss on the property as follows: Fair market value of real property before fire
$31,000.00
Fair market value of real property after fire
7,500.00
Total loss to real property (Fair market value loss)
23,500.00
Cost or adjusted basis in real property
20,476.00
Lower of fair market loss or adjusted basis
20,476.00
Less:Insurance reimbursement
15,950.00
Deductible casualty loss to real property
$ 4,526.00
*21 At trial petitioners submitted a revised inventory of personal property destroyed in the fire. Such property was listed as having a basis of $53,514.56 and a fair market value of $40,099.50. OPINION 1. Amount of Loss Sustained on Household Contents On December 18, 1968, petitioners' residence and household contents were destroyed by fire. The first issue for our decision is the determination of the loss sustained by petitioners on the destruction of their household contents. Where property is destroyed by fire, the proper measure of the loss sustained is the difference between the value of the property immediately before the casualty and its value immediately thereafter, not to exceed its cost or other adjusted basis, and diminished by the amount compensated by insurance 6 or otherwise and by the statutory $100 limitation. Sec. 165; [2]sec. 1.165-7(b) (1), Income Tax Regs.; Helvering v. Owens, 305 U.S. 468, 471 (1939); I. Hal Millsap, Jr., 46 T.C. 751, 759 (1966), affd. 387 F.2d 420 (C.A. 8, 1968). *22 Petitioners claim that their household property had a basis of $53,514.56, and a fair market value of $40,099.50, while respondent argues that its fair market value did not exceed $8,293.81. Respondent's valuation is based upon an appraisal by the head of the pricing department of "Goodwill Industries," a second-hand retail store. We do not believe that such valuation accurately reflects the actual "fair market value" of the property as we defined and used that phrase in a case involving this identical issue, Edmund W. Cornelius, 56 T.C. 976 (1971), at page 979, 980: Hence the narrow issue we must resolve is the "fair market value" of the household contents immediately before the fire because that will determine the amount of the casualty loss deduction to which the petitioners are entitled. * * * Within the statutory context of section 165 and within the scope of Helvering v. Owens, supra, we view the term "fair market value" under these particular circumstances as being the cost of the household contents less their depreciation in value. 7 In *23 accordance with the universally accepted principle that a contract of fire insurance is intended to afford indemnity for loss, the insured is allowed to recover no more than the actual value of his property at the time of loss. Unless the policy is valued, the sum set forth upon its face is intended merely as the maximum limit of the insurer's liability, not the measure of it. "Actual value" is a term susceptible of different interpretations. With respect to household goods and wearing apparel, it is generally held that the amount of recovery for a loss is not limited to the price which could be realized by a sale in the market, but that the insured may recover the value of the goods to him, based on his actual money loss resulting from being deprived of the property. 63 A.L.R. 240; 61 A.L.R. 2d 711, 733. "Actual value" generally means what the property is worth, allowing for depreciation. For the various tests or criteria governing determination of value, see 15 Couch, Insurance, secs. 54:134-54:138 (2d ed. 1966). The value of destroyed property must be ascertained *24 in a reasonable way, and not by attempting to show, as respondent has done through his "expert" witness, what the personal property would have brought if hawked off by a secondhand [sic] dealer or at a forced sale. As early as Marsh v. Union Pacific Ry. Co., 9 Fed. 873, 875-876 (1882), a Federal circuit court said: Whenever it appears that there is anything like an established price in the market, for which the articles in controversy can be replaced, that price will measure the damages for converting such articles.But for household goods, more or less worn, there is no established price, unless it be that at which second-hand goods of the same kind are sold. And although people who discontinue housekeeping may be compelled to accept that price, no one will contend that it is the full value of the goods. The fact that goods in use, if sold at all must be sold at a sacrifice, is too plain for argument, and therefore the price of such goods in market will not be adequate compensation to one who is deprived of his goods by a wrong-doer. Perhaps the best way to arrive at the value of such goods would be to show the price in market of new goods of the same kind, and *25 then show, as nearly as possible, the extent of depreciation from use. * * * 8 Petitioners' valuation of their household property was based solely on their memory of the original cost of the property and their estimation of the fair market value of the property prior to the fire. While the owner of property is qualified to give his opinion as to the value of property, "the weight to be given such testimony will be affected, of course, by his knowledge, experience and many other factors involved in weighing such an opinion." Biddle v. United States, 175 F. Supp. 203, 204 (E.D. Pa. 1959). We are of the opinion that petitioners' valuation should be given substantial weight. At trial they submitted a detailed inventory of the property destroyed in the fire. Petitioner Howard Scharf's testimony displayed a thorough knowledge of the items destroyed, both in terms of their identity and original cost. But we note, and he admitted, that he was not sure of the dates of purchase of all the items. Thus, in making our own findings on dates of purchases, we have not in all cases *26 accepted the dates petitioners alleged. Taking all the evidence in the record into account, we hold that the fair market value of petitioners' household contents was $32,000. 9 2. Deductions for Losses on Children's Possessions Included in petitioners' inventory of household contents destroyed in the fire were clothing and other property of petitioners' two children, Rick and Michel. The second issue for our decision is whether such property is properly includable in petitioners' casualty loss. In Thomas J. Draper, 15 T.C. 135 (1950), this Court denied the taxpayers a casualty loss deduction for the property of their 21-year-old daughter which was destroyed by fire, stating at pages 135-136: In the instant case the record does not establish that the petitioners owned the clothing and jewelry destroyed by fire. Although petitioners felt morally obliged as parents to replace the lost clothing, and actually did so, this fact is not determinative. Being an adult, and there being no extraordinary circumstances, the daughter could not have legally compelled her parents to make such replacement. Under the evidence and the law the jewelry and clothing belonged *27 to the daughter and the loss was personal to her. It is true that in the absence of a positive gift to a minor, parents retain title to clothing furnished to such minor child, granting to the child only possession thereof. ( Lloyd v. Rosenthal, 180 N.Y.S. 30). Here, however, the child had passed from the status of minor into adult womanhood. Whatever the rights of the petitioners prior thereto, on attaining her majority the daughter came into all the rights and duties of an adult. Among these was the ownership of her wardrobe and jewelry. 10 In the instant case, Rick reached majority prior to the time of the fire. Following our decision in the Draper case, supra, we hold that petitioners are not entitled to any deduction for his destroyed property. Though petitioners' inventory attributes ownership of most items of property to a particular member of the family, the ownership of a few items are not so designated. Reviewing the inventory and using our best judgment, we conclude that petitioners' loss on their household contents must be reduced by $4,700 to reflect *28 the fair market value of Rick's possessions. At the time of the fire, Michel was 20 years old and dependent on her parents for her support. Petitioners had a legal obligation to support her and, accordingly, to replace her possessions destroyed in the fire. Md. Ann. Code art. 72A, sec. 1 (1957); Weaver v. Garrett, 13 Md. App. 283, 287, 282 A.2d 509, 511 (Md. Ct. Spec. App. 1971). Under Maryland law, they also retained an interest in the property they furnished their daughter. Baltimore Steam Packet Co. v. Smith, 23 Md. 402, 409 (Md. Ct. App. 1865). Therefore, we hold that petitioners incurred a loss because of the destruction of Michel's possessions and are entitled to a casualty loss deduction for such property. 11 3. Effect of Statute of Limitations on Respondent's Additional Disallowance In their 1968 claimed casualty loss petitioners included a loss on their real property in the amount of $23,500 less insurance reimbursement totaling $15,950 for a net loss of $7,550. Such loss was not challenged by respondent in his deficiency notice which was *29 timely mailed on March 16, 1971. However, about three weeks before trial respondent filed a motion to amend his answer, which was granted by this Court. In such amended answer respondent determined an additional disallowance of petitioners' claimed casualty loss in the amount of $3,024, on the basis that they failed to use their lower basis of cost in computing their loss on the real property. The amount of a nonbusiness casualty loss deduction, prior to its reduction for insurance or other reimbursement, may not exceed the cost or other adjusted basis of the property. Sec. 165; sec. 1.165-7(b) (1), Income Tax Regs.; I. Hal Millsap, Jr., 46 T.C. 751, 759 (1966). While petitioners claimed such loss to be $23,500, the parties have stipulated that petitioners' basis in the property was $20,476. Thus, respondent's disallowance of $3,024 of their claimed loss on real property was correct. 12 Petitioners argue that the statute of limitations operates to bar respondent from decreasing their claimed loss on real property in his amended answer. This *30 issue must be decided against petitioners. Respondent may claim an increased deficiency at or before trial, even though the statute of limitations has run against additional assessments for the year in issue, if the original deficiency notice is mailed before the statute has run. Teitelbaum v. Commissioner, 346 F.2d 266, 267 (C.A. 7, 1965), affirming a Memorandum Opinion of this Court; W. H. Weaver, 25 T.C. 1067, 1086 (1956); Ticker Publishing Co., 46 B.T.A. 399 (1942); cf. Deakman-Wells Co. v. Commissioner, 213 F.2d 894, 898 (C.A. 3, 1954), reversing 20 T.C. 610 (1953). In filing the petition in the instant case, petitioners did not open the door to themselves alone ( Liebes v. Commissioner, 63 F.2d 870, 871 (C.A. 9, 1933), affirming 20 B.T.A. 731 (1930)), because this Court is given - 13 jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined is greater *31 than the amount of the deficiency, notice of which has been mailed to the taxpayer, and to determine whether any additional amount, or addition to the tax should be assessed, if claim therefor is asserted by the Secretary or his delegate at or before the hearing or a rehearing. [Sec. 6214(a).] Decision will be entered under Rule 50. Footnotes
1. Though the nature of the insurance policies is not explicitly stated in the record, both petitioners and respondent treat the insurance proceeds as reimbursement for the loss of real property. Thus, we assume that none of the insurance proceeds were reimbursement for petitioners' household contents destroyed in the fire. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩